Margaret Sullivan, Appellant, *v.* The New York, Lake Erie & Western R. R. Co.

*Negligence—Railroads—" Stop, look and listen "—Grade crossing—Presumption—Negligence.*

One who is struck by a moving train which was plainly visible from the point he occupied when it became his duty to stop, look and listen, must be conclusively presumed to have disregarded that rule of law and common prudence, and to have gone negligently into an obvious danger.

In an action by a widow against a railroad company to recover damages for the death of her husband, it appeared that the deceased was killed by a train at a grade-crossing on the defendant's railroad. He was riding in an open wagon on a turnpike road which was nearly level with the railroad tracks, and which crossed them diagonally. Within three hundred feet of the crossing an approaching train could have been seen at the distance of a quarter of a mile, and within fifty feet it could have been seen a mile from the crossing. The decedent was familiar with the locality and the crossing, the country was open and comparatively level, it was a clear, bright moonlight night, and the train was running rapidly, making the usual noise. There was no affirmative evidence of any act or omission of duty which might have misled one about to cross the tracks, or have tended to relax his vigilance. *Held*, (1) that the presumption was that the deceased did not stop, look and listen ; (2) that a nonsuit was properly entered.

*Evidence—Cross-examination—Negligence.*

Cross-examination should be confined to the subject of the examination in chief, and to the credit of the witness, and not used as a means of introducing a defense to the action. When under the guise of cross-examination the defendant has improperly brought to the attention of the jury facts upon which he relies to defend the action, they should be considered as evidence in chief for him, and they cannot be made the basis of a compulsory nonsuit; but in an action to recover damages for death at a grade crossing two witnesses were asked in their examination in chief to describe the crossing, whether at right angles or diagonal, and the position of the turnpike in relation to the railroad ; to locate the whistling post, to state whether the night was dark or moonlight ; whether the turnpike was rough or smooth, and the amount of travel on it; and whether they had heard the whistle or bell as the train passed. One of the witnesses, who had stated without objection on cross-examination that the wagon road for the distance of three hundred feet from the crossing was nearly as high as the railroad, was permitted under objection and exception to testify that a person riding in a wagon could see the railroad before reaching the crossing. The other witness, who had gone further in his examination in chief and had stated that the wagon made a noise and that there were houses

near the line of the railroad, was permitted under objection and exception to testify that if the deceased had stopped within fifty or one hundred feet of the crossing he could have seen down the railroad half a mile. *Held,* that the cross-examination was proper.

Argued March 17, 1896. Appeal, No. 84, July T., 1895, by plaintiff, from judgment of C. P. Susquehanna Co., Nov. T., 1891, No. 112, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ. Affirmed. STERRETT, C. J., dissents.

Trespass for death of plaintiff's husband.

At the trial it appeared that plaintiff's husband, Patrick Sullivan, was killed about midnight on February 17, 1891, at a point where a turnpike road crossed defendant's railroad diagonally at grade. It also appeared from the testimony that within three hundred feet of the crossing an approaching train could have been seen at the distance of a quarter of a mile, and within fifty feet it could have been seen a mile from the crossing. The country was open and comparatively level, and it was a clear, bright moonlight night.

When G. S. Wilcox, a witness for plaintiff, was on the stand, he was asked on cross-examination:

Q. And after you pass your house a person riding along in a wagon, looking towards his right, going in the direction of the crossing, could see the railroad all the way down to the crossing, couldn't he?

Objected to, that it is not cross-examination. Objection overruled. Plaintiff excepts. Bill sealed for plaintiff.

A. Yes, sir, you can see—the railroad is a little higher than the road most of the way. [1]

The same witness was asked this question on cross-examination:

Q. (Showing a map to the witness.) Look at this map and state whether it does not correctly represent the wagon road and the railroad as they converge, and the situation of the Wilcox crossing in both directions?

Objected to, that it is not cross-examination, and on the ground that it is permitting the defendant to introduce its defense on the cross-examination. Objection overruled. Plaintiff excepts. Bill sealed for plaintiff.

I should think that is about the way it is there. [2]

C. W. Wilcox, a witness for plaintiff, was asked the question on cross-examination:

Q. If Mr. Sullivan had been in his wagon that night and had stopped within fifty or one hundred feet of the crossing, going in the direction of the Bend, and had turned around and looked down the railroad track towards Kirkwood he could have seen down there at least a quarter or a half a mile, couldn't he?

Objected to, that it is not cross-examination. Objection overruled. Plaintiff excepts. Bill sealed for plaintiff.

A. Yes, sir. Q. And he could have seen a train coming on the track, of course, if he could see the track? A. Yes. [3]

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions; (4) entering nonsuit; (5) refusing to take off nonsuit.

*C. Smith, Geo. Little* with him, for appellant.—The cross-examination of plaintiff's witnesses was improper: Hughes v. W. Coal Co., 104 Pa. 213; Longenecker v. R. R., 105 Pa. 330; Hopkinson v. Leeds, 78 Pa. 400; Hielser v. McGrath, 52 Pa. 533.

When the plaintiff's own evidence discloses contributory negligence, there can be no recovery; but if it does not, the burden is on the defendant to disprove care, and in such case the question of negligence is for the jury: R. R. v. Weber, 76 Pa. 157; R. R. v. Werner, 89 Pa. 66; Cooley on Torts, 961; Lee v. Woolsey, 109 Pa. 127; Koehler v. R. R., 135 Pa. 346; R. R. v. Stout, 17 Wall. 657; R. R. v. Peters, 116 Pa. 206; R. R. v. Fitzpatrick, 35 Md. 32; R. R. v. Maugans, 61 Md. 61; R. R. v. Ives, 144 U. S. 433.

After the traveler has stopped, looked and listened, and sees or hears no train, he may then presume a clear track: R. R. v. Hagan, 47 Pa. 245; R. R. v. Coon, 111 Pa. 439; Baker v. Borough, 151 Pa. 234; Dublin R. R. v. Slattery, 39 L. T. Rep. (N. S.) 365; R. R. v. Jones, 128 Pa. 314; Gates v. R. R., 154 Pa. 572; Tyler v. R. R., 137 Mass. 242.

The law presumes the defendant properly performed his duty. Nothing less than direct, positive and undisputed evidence of

an entire failure on the part of the decedent to perform his duty would as a matter of law rebut this presumption: R. R. v. Heileman, 49 Pa. 63; R. R. v. Weiss, 87 Pa. 449.

In the absence of such evidence, the most that can be alleged is an imperfect performance of duty. This would be a question of fact for the jury: R. R. Co. v. Heileman, 49 Pa. 63; R. R. v. Weber, 76 Pa. 170.

Where there is any evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing evidence: Express Co. v. Wile, 64 Pa. 205; Mayo v. R. R., 104 Mass. 143; Payne v. Reese, 100 Pa. 301; Stone v. R. R., 47 Iowa, 42.

*Everett Warren, Henry A. Knapp* with him, for appellee.— The plaintiff's evidence showed contributory negligence on the part of the deceased: Carroll v. R. R., 12 W. N. 348; Moore v. R. R., 108 Pa. 349; Marland v. R. R., 123 Pa. 487: Myers v. R. R., 150 Pa. 386; Gangawer v. R. R., 168 Pa. 265; Ely v. R. R., 158 Pa. 233; Urias v. R. R., 152 Pa. 326; Railroad Company v. Bell, 122 Pa. 58; Morgan v. Railroad, 23 W. N. 189; Greenwood v. Railroad, 124 Pa. 572; Dean v. Railroad, 129 Pa. 514; Aiken v. Railroad, 130 Pa. 380; Kraus v. Railroad, 139 Pa. 272; Hauser v. Railroad, 147 Pa. 440; Schmidt v. R. R., 149 Pa. 357; Lees v. R. R., 154 Pa. 46; Derk v. R. R., 164 Pa. 243; Newhard v. R. R., 153 Pa. 417; Irey v. R. R., 132 Pa. 563; Smith v. R. R., 160 Pa. 119; Holden v. R. R., 169 Pa. 1; Hill v. Tionesta Twp., 146 Pa. 11; Haven v. Bridge Co., 151 Pa. 620; Lynch v. Erie City, 151 Pa. 380; Erie v. Magill, 101 Pa. 616.

OPINION BY MR. JUSTICE FELL, May 11, 1896:

The question in this case is whether a compulsory nonsuit was properly entered. The plaintiff's husband was killed by a train at a grade crossing on the defendant's road. He was riding in an open wagon on a turnpike road which was nearly level with the railroad tracks, and crossed them diagonally. Within three hundred feet of the crossing an approaching train could have been seen at the distance of a quarter of a mile, and within fifty feet it could have been seen a mile from the crossing. The decedent was familiar with the locality and the

crossing, the country was open and comparatively level, it was a clear, bright moonlight night and the train was running rapidly and made the usual noise. There was no affirmative evidence of any act or of any omission of duty which might have misled one about to cross the tracks or have tended to relax his vigilance.

No one who witnessed the accident was called to testify. The plaintiff's case rested upon the bare presumption that her husband had stopped, looked and listened before attempting to cross the tracks. His duty in this regard was fixed by an unbending rule of law. The presumption that he did it is based upon the fact that the natural instincts of men lead them to avoid injury. It prevails in the absence of direct testimony upon the subject, but it may be rebutted by the proof of facts and circumstances as well as by direct evidence. It is demonstrated by the testimony that, if he obeyed the legal injunction, he saw and heard the approaching train; and the only deduction possible is that he did not look and listen, or that seeing and hearing he went on regardless of the danger. The case comes directly within the rule stated in Myers v. B. & O. R. R. Co., 150 Pa. 386 : " That one who is struck by a moving train which was plainly visible from the point he occupied when it became his duty to stop, look and listen, must be conclusively presumed to have disregarded that rule of law and common prudence, and to have gone negligently into an obvious danger."

It remains to be considered whether the facts upon which the nonsuit was based were developed by an improper cross-examination of the plaintiff's witnesses. The order of the introduction of testimony and of the examination of witnesses must be left largely to the discretion of the trial judge, and it is often difficult in practice to determine the exact limits of a proper cross-examination. It should be confined to the subject of the examination in chief and to the credit of the witness, and not used as a means to introduce a defense to the action. When under the guise of cross-examination the defendant has improperly brought to the attention of the jury facts upon which he relies to defend the action, they should be considered as evidence in chief for him, and they cannot be made the basis of a compulsory nonsuit: Hughes v. Coal Co., 104 Pa. 213; Longenecker v. R. R. Co., 105 Pa. 330.

The two witnesses whose cross-examination is the subject of exception had been asked in their examination in chief to describe the crossing, whether at right angles or diagonal, and the position of the turnpike in relation to the railroad; to locate the whistling post, to state whether the night was dark or moonlight, whether the turnpike was rough or smooth, and the amount of travel on it; and whether they had heard the whistle or bell as the train passed. One of the witnesses, who had stated without objection on cross-examination that the wagon road for the distance of three hundred feet from the crossing was nearly as high as the railroad, was asked whether a person riding in a wagon had a view of the railroad before reaching the crossing. The other witness, who had gone further in his examination in chief and stated that the wagon made a noise and that there were houses near the line of the railroad, was asked whether if the deceased had stopped within fifty or one hundred feet of the crossing he could not have seen down the railroad half a mile. These questions were directly in the line of the examination in chief, the purpose of which had been to show the situation of the crossing and its dangers. The scene had been partly developed with the intention of showing that the situation was dangerous, and it was competent for the defendant in cross-examination to show that there were no dangers which could not have been avoided by the exercise of reasonable care and prudence. All the facts elicited by these questions were afterward proved by other witnesses called by the plaintiff in their examination in chief.

The assignments of error are overruled and the judgment is affirmed.

STERRETT, C. J., dissents, on the ground that defendant was erroneously permitted to interject its defense under the guise of cross-examination.